[Civ. No. 9818.   Second Appellate District, Division Two.—June 29, 1935.]

HOWARD WHITE et al., Respondents, v. HARRIETT B. ROSENSTEIN, Appellant.

Mark M. Cohen and Irwin M. Fulop for Appellant.

Hyams & Himrod for Respondents.

STEPHENS, P. J.—This is an appeal from a judgment in favor of plaintiffs-respondents made and entered pursuant to our order after a former appeal. Howard White, one of the respondents, is deceased, and no substitution has been made. The appeal of National Surety Company has been dismissed, leaving Harriett B. Rosenstein as the sole appellant.

The basic facts from which the cause of action arose are as follows: On the sixteenth day of March, 1928, Anna B. Dorn owned certain real property situated in Los Angeles County, and on that day one Ora Nye, falsely representing herself to be Anna B. Dorn, appeared before the defendant Harriett B. Rosenstein and signed the name of Anna B. Dorn as grantor to a deed purporting to convey such property to one J. Harvey; and at the same time the defendant Harriett B. Rosenstein took the acknowledgment of the said Ora Nye masquerading as Anna B. Dorn to such deed and attached her certificate of acknowledgment thereto in due form, in which she certified that Anna B. Dorn personally appeared before her and was known to her to be the person whose name was subscribed to the deed. The deed was subsequently recorded. At the time of the acknowledgment the notary was not acquainted with the said Ora Nye who was masquerading under the name of Anna B. Dorn, and an acquaintance of the appellant, Harriett B. Rosenstein, introduced Ora Nye to her as

Anna B. Dorn. To further satisfy herself as to the identity of the supposed Anna B. Dorn, the notary, Harriett B. Rosenstein, requested identification, and said Ora Nye, posing as Anna B. Dorn, exhibited to appellant correspondence, letters and other documents addressed to Anna B. Dorn and on which the name Anna B. Dorn appeared.

Thereafter and subsequent to the recordation of said purported deed Ora Nye, posing under the name of Jean Harvey, requested a loan of $4,000 from the plaintiffs to be evidenced by a promissory note and secured by a deed of trust on said property, which at that time stood of record in the name of J. Harvey. Ora Nye and her confederate, J. Harvey, approached a loan agent by the name of Whitman, and Whitman as their agent contacted a man by the name of Kinsey, who was a loan broker. Kinsey, who was an agent for respondents, told the latter about the proposed loan and went with Mary E. White to examine the property. The property consisted of a lot 50 by 120 feet, and on the front of the lot stood a vacant house. About 20 feet away from the front house and on the rear of the lot stood a smaller house, in which an elderly woman, Anna B. Dorn, then resided and in which she had resided for many months. Mary E. White and her agent Kinsey, after inspecting the front house, passed through the rear door into the space between the front and rear houses. There they saw Anna B. Dorn, owner of the premises, who was, as stated, living in the smaller house on the rear of said lot. Anna B. Dorn inquired as to what was wanted. Kinsey replied that they were looking through the house. Mrs. Dorn made no objections and no further conversation was had between the said elderly woman and Kinsey or Mrs. White, the latter believing the elderly woman, Mrs. Dorn, to be a tenant on said property. No investigation was made by Mrs. White or Kinsey relative to the status of the elderly woman, Mrs. Dorn, or her interest in or to the property. Thereafter respondents delivered into title company escrow the sum of $4,000, to be paid over, and J. Harvey and Jean Harvey, *alias* Ora Nye, delivered into the same escrow a promissory note and a trust deed purporting to secure the payment of said note. The note and deed were both signed by J. Harvey (a single man) and Jean Harvey (a married woman), and the signatures to the deed were acknowledged before a notary. No investigation of identity of Jean Harvey was made.

This case was before us on a former appeal (134 Cal. App. 576 [25 Pac. (2d) 884]). The trial court had decided in favor of plaintiffs, and after the signing of findings of fact and conclusions of law and a judgment the court determined under a motion authorized by section 663 of the Code of Civil Procedure to change its conclusions of law so that the specific or probative facts, rather than the ultimate facts found, should support the conclusions of law and the judgment. Accordingly the conclusions of law were changed and a judgment was entered for defendants. The appeal was upon the judgment roll, and we determined that it did not appear that the conditions authorizing such action were present. The conditions referred to consisted of those in the following quotation from *Forsythe* v. *Los Angeles Ry. Co.*, 149 Cal. 569 [87 Pac. 24] : "But, in the second place, the general rule is that the finding of the ultimate fact prevails in support of the judgment notwithstanding a finding of a probative or evidentiary fact which tends to show that the ultimate fact was found against the evidence. And findings of probative facts will not invalidate the finding of an ultimate fact unless the latter is based on the former, and is entirely overcome thereby, and unless, also, it appears that these findings of probative facts dispose of all the facts involved in the pleadings, and that the facts found constitute all the facts in the case." We therefore found that the specific or probative facts in the findings did not operate to overcome the ultimate facts which supported the judgment, and we reversed the judgment with directions to make and cause to be entered a judgment for plaintiffs against defendants as prayed for, or, in effect, the reentry of the first judgment. This order was complied with, and this appeal is upon this third judgment and is by the defendants, whereas the first appeal was by the plaintiffs.

The appeal is upon the record under section 953a of the Code of Civil Procedure, and one of the main points of the appeal is that plaintiffs were guilty of negligence or contributory negligence proximately contributing to the injury. Appellant contends that this and other points made are foreclosed by the former opinion and decision, under the doctrine of the law of the case. It will be borne in mind that it was held in the former opinion that the judgment roll did not reveal that *all* of the probative fact was set out specifically in the findings, and that was the reason why we could not say that the specific findings entirely overcame the ulti-

mate findings. There may have been probative facts directly supporting the ultimate findings. Our statement in the first opinion that the findings do not support the judgment appealed from, but on the contrary support the relief sought by the complaint or the first judgment entered, was based on the rule that it must be assumed on appeal that the evidence supports the ultimate facts found by the court where the facts are not in the record, except in the circumstances of the quotation from the Forsythe case. We intimated there that the probative facts stated in the findings would not support the judgment, but we specifically held that the point was not before us. We conclude that the law of the case does not preclude our examining the evidence for the purpose of considering the question of negligence.

Now after a study of the briefs upon this appeal, with the evidence before us, we can pass authoritatively upon the point we ventured to intimate upon. It is true, as we now ascertain it to be, that the probative facts referred to in the findings constitute practically all of the facts in the case bearing upon the questions of negligence and contributory negligence, and we have come to the conclusion that our intimation —as dictum so often is—was wrong. The author of this opinion also wrote the opinion referred to, but the concurring justices are not the same.

Simply stated, appellant contends that the incident of the meeting heretofore detailed between respondent Mary E. White and Anna B. Dorn constituted notice to Mrs. White of the circumstances sufficient to put a prudent person upon inquiry. From which appellant concludes that under the authority of section 19 of the Civil Code this case must be considered as though Mrs. White knew that the elderly lady who spoke to her upon the Dorn premises was Anna B. Dorn, the true owner. In the instance of this case Mrs. White visited the premises for the purpose of inspection, with the idea of accepting the property as security for a contemplated loan to the owner, as she thought. While upon the property she met —unknowingly—the owner, and thought she was a tenant. The owner inquired the mission of Mrs. White and her agent, and it would seem, therefore, that Mrs. White ought to have been on her notice that the old lady was not a trespasser but on the contrary had some right that prompted her to challenge the callers. Neither Mrs. White nor her agent vouchsafed their mission or sought to know why they had been ques-

tioned, but rather foreclosed any further conversation by a short, almost meaningless, reply, "just looking at the house", which was apparent without words.

As early in the California Supreme Court Reports as 12 Cal. 363 [73 Am. Dec. 543], in the case of *Hunter* v. *Watson*, it was decided that the open, notorious possession of real estate is evidence of notice as to ownership of one holding under an unrecorded deed against one holding a recorded deed. In *Smith* v. *Dall*, 13 Cal. 510, the opinion of Chief Justice Terry states, although it is not concurred in by Justice Field, the other member of the court functioning, that possession of a tenant is not notice of the landlord's title. This was soon overruled and ever since it has been consistently held that such possession is notice of the landlord's title. In *Havens* v. *Dale*, 18 Cal. 359, the doctrine of notice by possession was affirmed and defined in the following terms: "We hold, therefore, that the holder of the unrecorded deed must show a *possessio pedis*—an actual *bona fide* possession, consistent with his written title, and that this possession must be evidenced by an actual inclosure, or something equivalent, as showing the extent and the fact of his dominion and control of the premises."

There is, of course, no question of an unrecorded deed in the instant case, but the principle applies to the facts of this case and has been applied many times to purchases of real estate in which a person in possession personally or by tenant has a better title than the purchaser's vendor. The application of this principle is illustrated in *O'Rourke* v. *O'Connor*, 39 Cal. 442, and this case also covers the circumstances of the tenant's possession. We quote from the opinion: "If, then, the actual possession of the premises by the plaintiff's tenant was sufficient to put a purchaser from Cody on inquiry as to the plaintiff's title or interest, the judgment is right. It is well settled in this state that the possession of the tenant is notice of his landlord's title; that is to say, such possession is sufficient to put a person dealing with the property upon inquiry; and the law will charge him with notice of all those facts which he might have ascertained had he pursued the inquiry with proper diligence. (*Dutton* v. *Warschauer*, 21 Cal. (609) 628 [82 Am. Dec. 765]; *Pell* v. *McElroy*, 36 Cal. 268.)" It will be recalled that Mrs. White thought Anna B. Dorn was a tenant. She then was under the duty of inquiring as to the tenant's as well as the owner's title. It also

follows that Mrs. White was not mistaken as to the open and notorious possession of the whole of the premises by the owner, and inquiry would have revealed the true owner. It was apparent that the lot with the two houses was under one control. See *Scheerer* v. *Cuddy*, 85 Cal. 270 [24 Pac. 713], in which the doctrine is extended far beyond what it need be in the instant case, and in which the effect of possession of real estate and the diligence required of the vendee is fully treated by the court and by a very full quotation from the authoritative case of *Pell* v. *McElroy*, 36 Cal. 268. (See, also, *Whitney* v. *Sherman*, 178 Cal. 435 [173 Pac. 931]; *Tabor* v. *Beske*, 182 Cal. 214 [187 Pac. 746]; *Follette* v. *Pacific L. & P. Corp.*, 189 Cal. 193 [208 Pac. 295, 23 A. L. R. 965].) The same rule in principle and reason applies to encumbrances and is so held by the reviewing courts of this state, as will be noticed in some of the cases cited under different points. (See *Randall* v. *Allen*, 180 Cal. 298 [180 Pac. 941].)

We hold that the evidence supports the proposition that Mrs. White to all legal intents and purposes knew that the lady she met on the premises was the owner, with all of the consequences that follow therefrom. It was negligence on her part in the circumstances to proceed to deal with a person whose identity was actually wholly unknown to her. She relied upon a grant deed which proved to be spurious and was of record only by the grace of a notarial seal and certificate negligently affixed by the notary after a fraudulent acknowledgment by an impostor with criminal intent. (See *Security Trust & Savings Bank of San Diego* v. *Matson*, 116 Cal. App. 616 [2 Pac. (2d) 1001], and *Oakland Bank* v. *Murfey*, 68 Cal. 455 [9 Pac. 843].)

Section 801 of the Political Code provides: "For the official misconduct or neglect of a notary public, he and the sureties on his official bond are liable to the parties injured thereby for all the *damages* sustained." Section 1185 of the Civil Code defines the requisites for acknowledgments, and the case of *Anderson* v. *Aronsohn*, 181 Cal. 294 [184 Pac. 12, 10 A. L. R. 866], treats definitely of the duties and liabilities of notaries public.

It seems, to the point of demonstration, that the notary herein, appellant, was negligent, and we shall waste no time discussing that point. It seems certain also that Mrs. White, the respondent, was guilty of negligence. The negligence of both contributed proximately to the fact that respondent

loaned her money to a person other than the owner of the property that was taken as security, and if any financial damage was suffered by respondent she is without remedy as against appellant. (*Security etc. Bank* v. *Matson, supra.*)

Appellant argues that since the money was loaned upon a note and trust deed long after the fraudulent grant deed was put of record under the negligent and fraudulent acknowledgment, and such trust deed was signed by J. Harvey (a single man) and Jean Harvey (a married woman), and a notary took the acknowledgments which were accepted without appellant's checking the identity of Jean Harvey as Ora Nye, the acknowledgment to the grant deed did not contribute proximately to the injury. We do not agree with this, and in view of our conclusion that respondent was negligent we shall not detail our reasons for such nonagreement. We think, however, that a proper understanding of *Oakland Bank* v. *Murfey, supra, Security etc. Bank* v. *Matson, supra,* and *Smith* v. *Yule,* 31 Cal. 180 [89 Am. Dec. 167], will reveal our reason and support our conclusion.

Appellant contends that there is no finding of value of the mortgaged premises nor of the insolvency of the makers of the note, and that, indeed, there are no allegations in the complaint covering these points, which she thinks are essential. (*Heidt* v. *Minor,* 113 Cal. 385 [45 Pac. 700].) But here we do run into the law of the case. In the face of these contentions, made by respondents in the first appeal, we determined that the ultimate facts set out in the findings supported the relief sought by the complaint, hence our direction that a judgment be made in favor of plaintiffs; and these subjects are not referred to in any manner in the findings. They are not the subject of ultimate findings and therefore there are no findings to which we can apply the test of support by the record. So far as we are informed these points were not raised in any pleading, and it would appear that the trial court found its two former judgments upon plaintiffs' theory that no showing was needed beyond the negligent taking of the impostor's acknowledgment to the grant deed to entitle plaintiffs to recover from the notary the full sum loaned, with interest. We do not want to be understood as approving this theory, but since this was the only theory upon which the trial court could have acted, and since our former opinion held that the findings supported the judgment, there is no escaping the

conclusion that the law of the case precludes its reconsideration. (*Phelan* v. *City and County of San Francisco*, 20 Cal. 39; *Lucas* v. *City of San Francisco*, 28 Cal. 591; *Lambert* v. *Bates*, 148 Cal. 146 [82 Pac. 767]; *Ellis* v. *Witmer*, 148 Cal. 528, 531 [83 Pac. 800]; *Tally* v. *Ganahl*, 151 Cal. 418 [90 Pac. 1049]; *Conde* v. *Sweeney*, 16 Cal. App. 157 [116 Pac. 319].)

To recapitulate: We are convinced that the notary, the appellant, was negligent; but we are also convinced that the mortgagee, the respondent, was equally guilty of negligence, and that the negligence of each contributed proximately to cause the loss. The evidence of the transactions is all before us, and there is no dispute as to facts. A new trial would but reproduce the same legal problems that we have treated herein, and our treatment has become the law of the case.

The judgment is reversed and the trial court is directed to make and cause to be entered a judgment for the defendant Harriett B. Rosenstein and against the plaintiffs.

Crail, J., and Fricke, J., *pro tem.*, concurred.